IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KAW DRIVE, LLC,                       )
                                      )
              Plaintiff,              )
                                      )
      v.                              )    Case No. 19-2238-JWL
                                      )
SECURA INSURANCE,                     )
A MUTUAL COMPANY,                     )
                                      )
              Defendant.              )
                                      )
_____)

## MEMORANDUM AND ORDER

This insurance coverage dispute comes before the Court on defendant insurer's motion for partial summary judgment (Doc. # 71). For the reasons set forth below, the Court **grants the motion in part and denies it in part**. The motion is granted with respect to plaintiff's claims for replacement cost benefits for damaged property that plaintiff has not actually repaired or replaced. The motion is otherwise denied.

Plaintiff claims that it is entitled to benefits under an insurance policy issued by defendant, based on damage to plaintiff's warehouse from a storm. Defendant paid plaintiff a total of $165,952.85 under the policy, based on the actual cash value (ACV) for damage to HVAC systems on the warehouse roof and for damage to a portion of the surface of the western section of the roof. Plaintiff asserts that its roof suffered additional damage from the storm, and it seeks benefits for all damage based on a total replacement cost (RC) of $1,472,727.74. Defendant argues that plaintiff is not entitled to replacement cost

benefits under the policy, and that benefits for covered losses are limited to ACV. On that basis, defendant seeks summary judgment[1] on any claim for benefits based on replacement cost.[2]

The parties agree that Kansas law governs these claims by a Kansas insured. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (in diversity action, court applies the forum state's choice-of-law rules); *Safeco Ins. Co. of Am. v. Allen*, 262 Kan. 811, 822 (1997) ("Kansas follows the general rule that the law of the state where the insurance contract is made controls."). Under Kansas law, "unambiguous contracts are enforced according to their plain, general, and common meaning in order to ensure the intentions of the parties are enforced." *See Lincoln v. BNSF Rwy. Co.*, 900 F.3d 1166, 1187 (10th Cir. 2018) (quoting *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1063 (10th Cir. 1998)).

    1.    <u>Actual Repair or Replacement</u>

Defendant first argues that plaintiff may not recover RC benefits under the policy for any damaged property that plaintiff has not already repaired or replaced, and on that basis it seeks summary judgment on any such claim. Plaintiff's policy included optional Replacement Cost coverage, and the policy stated the scope of that coverage in relevant part as follows:

---

[1] The Court grants summary judgment in favor of a movant if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

[2] Plaintiff's claim for consequential damages is not at issue in this motion.

**3.   Replacement Cost**

a.  Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

…

d.  We will not pay on a replacement cost basis for any loss or damage:

(1)  Until the lost or damaged property is actually repaired or replaced; and

(2)  Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

This provision states unequivocally that defendant is not required to pay benefits based on replacement cost until the property is actually repaired or replaced. Based on this provision, defendant argues that if plaintiff has not already effected a repair or replacement for specific damage, plaintiff may recover only ACV benefits for such damage. As defendant notes, courts have enforced nearly-identical provisions under Kanas law as unambiguously requiring actual repair or replacement before RC benefits may be recovered. *See, e.g.*, *Vakas v. Hartford Cas. Ins. Co.*, 2009 WL 1158667, at *3-4 (D. Kan. Apr. 28, 2009) (citing *Burchett v. Kansas Mutual Ins. Co.*, 30 Kan. App. 2d 826, 828-29 (2002)), *aff'd*, 361 F. App'x 1 (10th Cir. 2010).

Plaintiff argues because under paragraph 3.a RC replaces ACV in the valuation mandated for each option for defendant under the policy's loss payment provision, defendant must pay on a RC basis. The policy unambiguously provides, however, that the RC optional benefits must only be paid if the property is actually repaired or replaced first.

Plaintiff's primary argument is that its obligation to repair or replace is excused by a prior breach of the policy by defendant, namely defendant's failure to pay initially a

3

proper amount of ACV benefits. Plaintiff argues that a proper ACV payment is the trigger for the RC condition requiring actual repair or replacement by plaintiff. Plaintiff would distinguish defendant's cases on that basis, as in those cases the insureds had not disputed the ACV calculations. In this case, plaintiff does dispute the proper amount of ACV benefits paid by defendant, as plaintiff claims that the storm inflicted more damage than the damage for which defendant accepted coverage and paid ACV benefits.[3]

The Court rejects this argument by plaintiff, which finds no support in the language of the policy. As noted, the policy clearly conditions RC benefits on plaintiff's actual repair or replacement of the damaged property, without any additional qualification that the condition applies only if defendant first pays ACV benefits. The fact that the policy provides for payment for damaged property does not undo this condition concerning the amount of benefits. Under plaintiff's interpretation, if the insurer were to dispute that there was a covered loss, and therefore does not pay any benefits (on an ACV or RC basis), then the actual-repair condition for RC benefits would be effectively written out of the policy for such a situation. The policy does not contain any such language, however. Plaintiff also argues that receipt of ACV benefits would allow the insured to fund the required repair; of course, in a case in which the RC exceeds the ACV, the ACV would *not* completely fund the repair. Again, the policy does not require the insurer to fund the repair; rather, it clearly requires the insured to effect the repair before RC benefits must be paid.

---

[3] By this argument, plaintiff impliedly concedes that it would not be entitled to RC benefits for damage for which defendant did pay ACV benefits and for which plaintiff has not effected a repair or replacement.

4

Moreover, plaintiff has not shown that the failure of the actual-repair condition may be excused by defendant's "prior material breach" in failing to pay ACV benefits initially. With respect to the claimed damage for which defendant did not pay ACV benefits to plaintiff, defendant effectively denied the claim entirely. Plaintiff asserts that that denial was a breach of the policy, but plaintiff has not provided any authority to support the argument that such a breach negates the condition for payment of RC benefits. In the cases cited by plaintiff, the courts recognized that an insured's own breach of specific policy obligations under the policy (to cooperate or to obtain approval for settlement) could be excused if the insurer had already denied the claim at the time of the breach, and the insurer could not escape liability for coverage on that basis. *See Nelson v. Progressive Northwestern Ins. Co.*, 2016 WL 880506, at *5-6 (D. Kan. Mar. 7, 2016) (Lungstrum, J.) (under Kansas law, insured's breach of duty of cooperation excuses performance by insurer if prejudice has resulted from breach; but if insurer had already denied coverage, it suffered no prejudice, and the insured's breach may therefore be excused); *First Hays Banshares, Inc. v. Kansas Bankers Surety Co.*, 244 Kan. 576, 582 (1989) (when insurer denied coverage, it forfeited right to prior approval of settlement, and thus insured's breach of obligation not to settle without approval was excused). The present case does not present similar circumstances. Rather, here plaintiff effectively seeks to rewrite or add a qualification to a condition for an optional coverage benefit. Plaintiff has not cited authority showing that under Kansas law such a condition concerning the amount of the benefit may be negated if the insurer has denied a disputed claim. Again, the language of

the policy governs, and the policy in this case does not qualify the actual-repair condition based on whether defendant has first paid ACV benefits to plaintiff for claimed damages.

Plaintiff also argues that the prevention doctrine should apply as recognized in *Morton Buildings, Inc. v. Department of Human Resources*, 10 Kan. App. 2d 197 (1985). The court in *Morton* described this doctrine as follows:

> The doctrine of prevention is an equitable doctrine of excuse. A party who fails to satisfy a condition precedent may avoid the consequences of his failure if it is caused by the conduct of the other party to the agreement. However, the burden is on the party seeking to take advantage of the doctrine to prove its application. In addition, the conduct alleged to have thwarted performance of the condition must in some way be unjustified. . . . Similarly, it is generally acknowledged that nonperformance of a condition may not be excused when the actions taken by the party allegedly hindering the performance are actions which are permitted by the contract.

*See id.* at 201 (citations omitted). Plaintiff argues that defendant, by failing to pay ACV benefits that plaintiff could use to complete repairs, prevented the fulfillment of the actual-repair condition for payment of RC benefits.

The Court declines to exercise its equitable powers in this way. Plaintiff has not cited any authority to suggest that this doctrine may be applied in this context, in which the denial of an insurance claim allegedly hindered fulfillment of a condition to receive a certain type of benefits on that claim. Moreover, plaintiff has not been prevented from effecting repairs (it could use other funds); rather, defendant merely seeks to enforce the policy, which requires that repairs be completed first. The Court will not act in equity effectively to rewrite the parties' policy to suit plaintiff's desired outcome.[4]

---

[4] In addition, as defendant points out, plaintiff failed to preserve in the pretrial order any claim of an avoidance based on this doctrine.

Accordingly, the Court will enforce the clear language of the policy, which does not allow plaintiff to recover RC benefits for damaged property that it has not already repaired or replaced. Defendant is therefore granted summary judgment to that effect.[5]

2.   180-Day Notice Provision

Defendant also argues that plaintiff is not entitled to any RC benefits under the policy (even for damages that plaintiff has already repaired) because plaintiff failed to satisfy a requirement that notice be given to defendant within 180 days of the damage. Defendant relies on the following portion of the policy's provision for the optional Replacement Cost coverage:

**3.   Replacement Cost**

…

c.  You may make a claim for actual loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss of damage.

---

[5] The parties dispute the amounts that plaintiff has already paid for repairs. Relying on an October 2019 interrogatory answer by plaintiff, defendant states that plaintiff has completed $53,453 in repair work. In its response to the instant motion, plaintiff provides evidence of an additional $7,215 in repair work since its prior interrogatory answer. The Court need not resolve that dispute at this time, as the propriety of allowing a claim for RC benefits based on the damage more recently repaired has not been fully litigated. The Court notes that if defendant sought to strike such a claim, it would need to demonstrate sufficient prejudice from plaintiff's failure to supplement its interrogatory answer. The Court further notes that compliance with the requirement that repairs be made as soon as reasonably possible has not been placed at issue in this motion.

7

By its unambiguous language, this provision imposes a 180-day-notice requirement "[i]n the event" that the insured has elected to be paid ACV benefits but then wishes to claim RC benefits instead. Defendant argues that plaintiff was required to give such notice in order to receive RC benefits here, but it has not explained how that notice provision was triggered in this case. More to the point, defendant has not even attempted to explain how or when plaintiff first elected to have its claim settled on an ACV basis in this case.

Defendant relies on the *Vakas* case, in which the court stated that under a policy with a similar term, the insured was required to notify the insurer of its intent to make a claim for RC benefits within 180 days of the loss. *See Vakas*, 2009 WL 1158667, at *3. The court then rejected the insured's argument that the insurer should be estopped from enforcing that requirement because of statements the insurer had made to the insured. *See id.* at *4. In that case, however, the court's statements concerning the 180-day requirement were dicta, as the court held that the insured could not recover RC benefits because it had not first effected repairs. *See id.* at *3-4.[6] Moreover, the court did not provide any analysis or discuss how the insured had first elected payment on an ACV basis in that case (the trigger for the 180-notice-requirement). Thus, the case has no persuasive value here. Defendant has not shown that plaintiff elected to recover ACV benefits in this case; thus, defendant has not shown that the 180-day-notice requirement was triggered in this case. Accordingly, defendant is not entitled to summary judgment on the basis of a failure to give such notice.

---

[6] In affirming the ruling by the district court, the Tenth Circuit did not discuss the application of the 180-day-notice provision. *See* 361 F. App'x 1.

8

In addition, as plaintiff notes, defendant has not shown any prejudice from the lack of notice. *See, e.g.*, *Cessna Aircraft v. Hartford Acc. & Indem. Co.*, 900 F. Supp. 1489, 1515 (D. Kan. 1995) (untimely notice alone does not excuse obligation to provide coverage under Kansas law; actual prejudice must be shown by the insurer) (citing cases). To the contrary, plaintiff has noted that defendant conceded in a deposition that it did not suffer any prejudice in this case. In its reply brief, defendant has not even addressed this issue concerning required prejudice. Accordingly, for this reason as well, defendant has not shown that it is entitled to summary judgment on this basis.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for partial summary judgment (Doc. # 71) is hereby **granted in part and denied in part**. The motion is granted with respect to plaintiff's claims for replacement cost benefits for damaged property that plaintiff has not actually repaired or replaced, and defendant is awarded judgment on any such claim. The motion is otherwise denied.

IT IS SO ORDERED.

Dated this 15th day of October, 2020, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge